DECUIR, Judge.
This matter arises out of a vehicular accident on U.S. Highway 171 in Vernon Parish, Louisiana. Suits for personal injury were filed by Leían and Dorothy Self and Stanley and Ann Smith, adverse to L.J. Earnest, Inc., L.H. Bossier, Inc., and their insurers, and the State of Louisiana through the Department of Transportation and Development. Following a bifurcated trial on the merits of these consolidated eases, the jury rendered a verdict finding no fault on the part of any of the defendants. The trial judge in oral reasons found no fault on the part of the State of Louisiana. Subsequently, plaintiffs’ motions for new trial were denied. Plaintiffs, Leían and Dorothy Self and Stanley and Ann Smith, appeal the judgment of the trial court in favor of defendants and the judgment denying plaintiffs’ motions for new trial.
Plaintiffs contend that the trial judge erred in denying the motions for new trial, that both the jury and the trial judge erred in finding that Ann Smith’s vehicle did not enter the drop-off area of U.S. Highway 171, and in finding no fault on the part of the defendants. We affirm.

FACTS

In the early evening of December 20,1986, plaintiffs’ vehicles collided near a road construction site on U.S. Highway 171, when a van driven by Ann Smith and occupied by her daughter, Laura Smith, crossed the center line of the roadway striking a vehicle driven by Leían Self and occupied by Dorothy Self, Ivory Jarred, Lesa Watson and Kristen Watson. Plaintiffs allege that immediately prior to the accident, Mrs. Smith ran off the roadway into an unreasonably dangerous drop-off along Highway 171. Plaintiffs further allege that after entering the drop-off, Mrs. Smith attempted to re-enter the roadway, but over-steered her vehicle and crossed the center line of the roadway into the path of the Self vehicle. Plaintiffs sued the State of Louisiana through the DOTD, L.H. Bossier, Inc., and L.J. Earnest, Inc. The record reveals the DOTD had entered into a contract with L.J. Earnest, Inc. for the reconstruction of Highway 171. L.J. Earnest, Inc. subcontracted with L.H. Bossier, Inc. to perform asphalt paving.
Plaintiffs contend that the defendants were at fault for failing to maintain the roadway in a safe condition, for allowing the existence of the unreasonably dangerous drop-off area, for failing to properly warn motorists of the hazardous condition, and for failing to ensure warnings were properly maintained.

LAW

Plaintiffs filed motions for new trial in order to introduce the testimony of Carmen Love to contradict the testimony of Trooper Kenneth Coleman as to certain facts, including whether a warning marker was in place immediately following the accident. Plaintiffs argue they are entitled to a new trial on peremptory grounds on the basis of newly discovered evidence pursuant to LSA-C.C.P. art. 1972, and alternatively on discretionary grounds pursuant to LSA-C.C.P. art. 1973.
Plaintiffs in brief contend that Ms. Love will testify that she was the first to arrive at the scene of the accident; that she does not recall seeing the marker in question indicating the edge of the drop-off area; that she drove off into the drop-off area after accident at the same location Trooper Coleman testi *448 fied he saw the marker; and that she did not knock a marker down with her vehicle. According to plaintiffs, Ms. Love would also testify that she checked on the occupants of both the Self and Smith vehicles and that she transported one of the injured Smiths to the hospital. Ms. Love was not subpoenaed to appear- at the trial, nor was her deposition taken prior to trial. The record reflects that Ms. Love’s identity was known by plaintiffs since shortly after the accident and for quite some time prior to trial. Although Ms. Love may have been beyond the subpoena power of the court as plaintiffs argue, plaintiffs had ample time and opportunity to depose this witness. We conclude that plaintiffs are not entitled to a new trial under LSA-C.C.P. art. • 1972. We likewise find no error in the trial judge’s denial of the motions for new trial under LSA-C.C.P. art. 1973.
Addressing the remaining assignments of error which involve questions of fact, we note the trial judge in oral reasons concluded there were adequate markings in place to make known to motorists the existence of the drop-off area, and that there was no evidence other than speculation that Mrs. Smith ran off the roadway into the drop-off area. The trial court concluded a preponderance of the evidence indicates Mrs. Smith did not enter the drop-off area. Factual findings of the trial court are not to be disturbed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989).
We note the testimony of Patrick Hoock, an eyewitness to the accident who was traveling behind the Self vehicle prior to the accident. Mr. Hoock did not notice the Smith vehicle leave the roadway prior to the accident. Mr. Hoock testified that prior to the accident it appeared that the Smith vehicle was making a left turn.
Trooper Kenneth Coleman was the first officer to arrive at the scene of the accident. Trooper Coleman testified there were construction signs all over the construction zone area and that a 2 x 4 post with reflective striping marking the drop-off area in question was in place at the time of his arrival. As part of his investigation, Trooper Coleman checked to determine whether the Smith vehicle may have run off the roadway at the drop-off. Trooper Coleman testified there were no tire marks and no asphalt edges that had been knocked off the roadway to indicate the Smith vehicle may have entered the drop-off area. The day after the accident, Trooper Coleman inspected the Smith vehicle for evidence of scratches to the undercarriage or the presence of asphalt. He also inspected the tires for scrape marks where the tires would have struck the edge of the asphalt. Trooper Coleman found no asphalt nor scratches to the undercarriage of the Smith vehicle, nor did he find any scrape marks on the tires.
Jack Martin, Chief of Police for the Town of Anacoco, was also called to the scene of the accident. Chief Martin inspected the Smith vehicle the evening of the accident and found no marks on the frame of the vehicle to indicate the vehicle had entered the drop-off and then returned to the roadway. The day after the accident, Chief Martin inspected the scene of the accident looking for gouge marks or markings to indicate the Smith vehicle had entered the drop-off area and re-entered the roadway. He found no evidence to indicate that this is what transpired.
Finally, Dr. Joseph Blaschke, an expert in accident reconstruction and transportation engineering analysis, concluded in his analysis that the Smith vehicle did not enter the drop-off area. We note from the record that Dr. Blaschke based his findings not only on the assumption that the warning marker in question was in place after the accident and therefore was not struck by the Smith vehicle as plaintiffs argue, but also upon several other factors.
We find no manifest error in the findings of the court below that there is a lack of physical evidence that Ms. Smith’s vehicle entered the drop-off area and then re-entered the roadway causing her to over-steer her vehicle into the path of the Self vehicle. The record clearly supports the factual findings of the jury and the trial judge.
Affirmed. Costs of appeal are assessed equally against plaintiffs-appellants.